UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ x
                                     :

   UNITED STATES OF AMERICA          :

                                       :

         - v. -                  :                19 Cr. 833 (SHS)

                                         :

   CHAD ALLEN,                       :
   CAMERON BREWSTER, and        :
   JOSEPH CIACCIO,                :

                                         :

                      Defendants.      :

------------------------------------------------------ x

## MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN OPPOSITION TO THE DEFENDANTS' PRETRIAL MOTIONS

AUDREY STRAUSS
Acting United States Attorney
Southern District of New York

Kiersten A. Fletcher
Benet J. Kearney
Robert B. Sobelman
Assistant United States Attorneys
*- Of Counsel -*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 1

A.    The Search Warrants ................................................................................. 1

B.    The Indictment ........................................................................................ 2

ARGUMENT ......................................................................................................... 3

I.    The Defendants' Motion for a Bill of Particulars Should Be Denied ........................... 3

A.    The Defendants Failed to Comply With Local Rule 16.1 ............................................. 4

B.    The Defendants Are Not Entitled to a Bill of Particulars ........................................... 4

1.    Applicable Law ...................................................................................... 4

2.    Discussion ........................................................................................... 7

II.   The Defendants' Motion to Disclose Grand Jury Testimony Should Be Denied ...... 11

A.    Applicable Law ...................................................................................... 11

B.    Discussion ........................................................................................... 12

III.  The Defendants' Motion to Disclose *Brady*, *Giglio*, and Jencks Act Material Should Be Denied ........................................................................................... 13

IV.   Brewster's Motion to Suppress Should Be Denied ..................................................... 16

A.    Applicable Law ...................................................................................... 16

1.    Probable Cause ...................................................................................... 16

2.    Misrepresentations and Omissions in a Search Warrant Affidavit ..................... 17

B.    Discussion ........................................................................................... 20

1.    The Affidavit Did Not Contain Knowingly False or Misleading Information .... 20

2.    The Consensual Recordings Do Not Implicate the Fourth Amendment ............. 26

V.    The Defendants' Motion to Permit More Motions Should Be Denied ...................... 28

CONCLUSION ..................................................................................................... 29

# TABLE OF AUTHORITIES

*Brady v. Maryland*, 373 U.S. 83 (1963) ...................................................................... 13

*Franks v. Delaware*, 438 U.S. 154 (1978) ...................................................... 17, 18, 20

*Giglio v. United States*, 405 U.S. 150 (1972) ................................................................ 15

*Illinois v. Gates*, 462 U.S. 213 (1983) .................................................................... 17, 18

*In re Grand Jury Subpoena*, 103 F.3d 234 (2d Cir. 1996) .............................................. 11

*In re United States*, 834 F.2d 283 (2d Cir. 1987) .......................................................... 15

*Rivera v. United States*, 928 F.2d 592 (2d Cir. 1991) .................................................... 18

*United States v. Aulicino*, 44 F.3d 1102 (2d Cir. 1995) .................................................. 26

*United States v. Awadallah*, 349 F.3d 42 (2d Cir. 2003) .................................... 18, 19, 20

*United States v. Barone*, 913 F.2d 46 (2d Cir. 1990) ..................................................... 27

*United States v. Bellomo*, 263 F. Supp. 2d 561 (E.D.N.Y. 2003) ..................................... 5

*United States v. Binday*, No. 12 Cr. 152 (CM), 2012 WL 6135013 (S.D.N.Y. Dec. 10, 2012) . 7, 9

*United States v. Bonventre*, No. 10 Cr. 228 (LTS), 2013 WL 2303726 (S.D.N.Y. May 28, 2013)
............................................................................................................................... 7, 9

*United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987) ................................... 7, 9, 10

*United States v. Brown*, 744 F. Supp. 558 (S.D.N.Y. 1990) ........................................... 18

*United States v. Calandra,* 414 U.S. 338 (1974) ........................................................... 12

*United States v. Canfield*, 212 F.3d 713 (2d Cir. 2000) ............................. 18, 20, 21, 24

*United States v. Chen*, 378 F.3d 151 (2d Cir. 2004) ....................................................... 7

*United States v. Clark*, 638 F.3d 89 (2d Cir. 2011) ...................................................... 18

*United States v. Conyers*, No. S13 15 Cr. 537 (VEC), 2016 WL 7189850 (S.D.N.Y. Dec. 9, 2016) ................................................................................................................... 15

*United States v. Cook*, 348 F. Supp. 2d 22 (S.D.N.Y. 2004) .......................................... 24

*United States v. Coppa*, 267 F.3d 132 (2d Cir. 2001) .............................................. 14, 15

*United States v. Cuti*, No. 08 Cr. 972 (DAB), 2009 WL 3154310 (S.D.N.Y. Sept. 24, 2009) ... 7, 9

*United States v. D'Amico*, 734 F. Supp. 2d 321 (S.D.N.Y. 2010) ..................................... 5

*United States v. Davis*, No. 06 Cr. 911 (LBS), 2009 WL 637164 (S.D.N.Y. Mar. 11, 2009) ...... 15

*United States v. Dunn*, No. 05 Cr. 127 (KMK), 2005 WL 1705303 (S.D.N.Y. July 19, 2005) ... 12

*United States v. Dupigny*, No. S1 18 Cr. 528 (JMF), 2019 WL 2327697 (S.D.N.Y. May 20, 2019) ...................................................................................................................... 26

*United States v. Facciolo*, 753 F. Supp. 449 (S.D.N.Y. 1990) ......................................... 5

*United States v. Falso*, 544 F.3d 110 (2d Cir. 2008) ............................................... 18, 20

*United States v. Feola*, 651 F. Supp. 1068 (S.D.N.Y. 1987) ...................................... 5, 19

*United States v. Ghavami*, No. 10 Cr. 1217, 2012 WL 2878126 (S.D.N.Y. July 13, 2012) ........ 11

*United States v. Gibson*, 175 F. Supp. 2d 532 (S.D.N.Y. 2001) ....................................... 5

*United States v. Guttenberg*, No. 07 Cr. 141 (DAB), 2007 WL 4115810 (S.D.N.Y. Nov. 14, 2007) ...................................................................................................................... 7, 9

*United States v. Henry*, 861 F. Supp. 1190 (S.D.N.Y. 1994) ....................................... 6, 7

*United States v. Heredia*, No. 02 Cr. 1246 (SWK), 2003 WL 21524008 (S.D.N.Y. 2003) ........... 7

*United States v. Johnson*, 21 F. Supp. 2d 329 (S.D.N.Y. 1998) ...................................... 5

*United States v. Kenyatta*, No. 16 Cr. 273 (DLC), 2017 WL 972114 (S.D.N.Y. Mar. 9, 2017) .. 15

*United States v. Ketabchi and Owimrin*, S8 17 Cr. 243 (SHS) ................................... 8, 11

*United States v. King*, No. 10 Cr. 122 (JGK), 2011 WL 1630676 (S.D.N.Y. Apr. 27, 2011) ...... 15

*United States v. Klump*, 536 F.3d 113 (2d Cir. 2008) ............................................ 17, 18

*United States v. Lahey*, 967 F. Supp. 2d 698 (S.D.N.Y. 2013)........................................ 20, 21, 24

*United States v. Leung*, 40 F.3d 577 (2d Cir. 1994) ...................................................... 12

*United States v. Lupoi*, No. 14 Cr. 42 (SJ), 2014 WL 12681632 (E.D.N.Y. Dec. 17, 2014) ....... 27

*United States v. Mahabub*, No. 13 Cr. 908 (AJN), 2014 WL 4243657 (S.D.N.Y. Aug. 26, 2014) ..................................................................................................................... 5, 6

*United States v. Mandell*, 710 F. Supp. 2d 368 (S.D.N.Y. 2010) .............................. 5, 9, 22

*United States v. Markey*, 131 F. Supp. 2d 316 (D. Conn. 2001) .................................. 24

*United States v. Martin*, 426 F.3d 68 (2d Cir. 2005) ...................................................... 17

*United States v. Ming*, No. 02 Cr. 596 (LAK), 2002 WL 1949227 (S.D.N.Y. Aug. 22, 2002)  ... 4, 27

*United States v. Mitlof*, 165 F. Supp. 2d 558 (S.D.N.Y. 2001)...................................... 11

*United States v. Moten*, 582 F.2d 654 (2d Cir. 1978) .................................................... 12

*United States v. Perez*, 247 F. Supp. 2d 459 (S.D.N.Y. 2003) ...................................... 19

*United States v. Rajaratnam*, 719 F.3d 139 (2d Cir. 2013) ..................................... 19, 20, 25, 26

*United States v. Ramirez*, No. 91 Cr. 493 (KMW), 1991 WL 177239 (S.D.N.Y. Aug. 30, 1991) ..................................................................................................................... 16

*United States v. Reilly*, 76 F.3d 1271 (2d Cir. 1996) ...................................................... 19

*United States v. Rittweger*, 259 F. Supp. 2d 275 (S.D.N.Y. 2003)................................. 7

*United States v. Rivera*, 750 F. Supp. 614 (S.D.N.Y. 1990)........................................... 18

*United States v. Rodriguez*, 496 F.3d 221 (2d Cir. 2007)............................................... 14

*United States v. Ruggiero*, 824 F. Supp. 379 (S.D.N.Y. 1993) .................................... 26

*United States v. Samsonov*, No. 07 Cr. 1198 (CM), 2009 WL 176721 (S.D.N.Y. Jan. 23, 2009) ..................................................................................................................... 6, 7, 9

*United States v. Skelos*, No. 15 Cr. 317, 2015 WL 6159326 (S.D.N.Y. Oct. 20, 2015)............. 10

*United States v. Smith*, 9 F.3d 1007 (2d Cir. 1993) ...................................................... 17

*United States v. Swanson*, 210 F.3d 788 (7th Cir. 2000) .............................................. 18

*United States v. Torres*, 901 F.2d 205 (2d Cir. 1990)................................................ 5, 12

*United States v. Trippe*, 171 F. Supp. 2d 230 (S.D.N.Y. 2001).......................... 5, 7, 9, 15

*United States v. Tuzman*, 301 F. Supp. 3d 430 (S.D.N.Y. 2017).................................... 10

*United States v. Ventresca*, 380 U.S. 102 (1965)............................................................ 17

*United States v. Vilar*, No. 05 Cr. 621 (KMK), 2007 WL 1075041 (S.D.N.Y. Apr. 4, 2007) .... 19, 23, 26

*United States v. Wagner*, 989 F.2d 69 (2d Cir. 1993)............................................... 16, 17

*United States v. Walsh*, 194 F.3d 37 (2d Cir. 1999) ................................................... 5, 7

*United States v. Watson*, 404 F.3d 163 (2d Cir. 2005) ................................................. 26

*United States v. White*, 401 U.S. 745 (1971) ................................................................ 26

*United States v. White*, No. 17 Cr. 611 (RWS), 2018 WL 4103490 (S.D.N.Y. Aug. 28, 2018) .. 26

*Walczyk v. Rio*, 496 F.3d 139 (2d Cir. 2007)................................................................ 17

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to (1) defendant Cameron Brewster's motion for a bill of particulars, which was joined by defendant Chad Allen and Joseph Ciaccio (together with Brewster, the "defendants"), (2) Brewster's motion to disclose grand jury testimony, which was joined by Allen and Ciaccio, (3) Brewster's motion for disclosure of *Brady*, *Giglio*, and Jencks Act material, which was joined by Allen and Ciaccio, (4) Brewster's motion to suppress certain evidence obtained by search warrant and certain consensual recordings, and (5) Brewster's request for permission to file additional and supplemental motions, which was joined by Allen and Ciaccio. (Dkt. Nos. 114-118, 124.) The defendants' motions are entirely without merit and should be denied.

## STATEMENT OF FACTS

### A. The Search Warrants

On November 18, 2019, the Honorable Elayna J. Youchah, United States Magistrate Judge for the District of Nevada, issued Search and Seizure Warrants authorizing law enforcement agents to search an office located at 2121 East Tropicana Avenue, Studio 4, in Las Vegas, Nevada (the "Office Search Warrant"), and a residence located at 7945 West Ford Avenue in Las Vegas, Nevada (the "Residence Search Warrant"), for evidence, fruits, and instrumentalities of wire fraud, in violation of 18 U.S.C. § 1343, conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, money laundering, in violation of 18 U.S.C. § 1956, and engaging in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. § 1957 (the "Subject Offenses").

In support of the issuance of the Office Search Warrant and the Residence Search Warrant, a Special Agent with Homeland Security Investigations submitted an affidavit (the "Affidavit")

setting forth, among other things, probable cause that defendant Cameron Brewster and others had committed the Subject Offenses and probable cause to search the subject office and subject residence.  (Dkt. No. 116-1.)  To demonstrate probable cause that Brewster and others had committed the Subject Offenses, the Affidavit set forth numerous facts regarding law enforcement agents' multi-year telemarketing fraud investigation.  (*Id*. at 4-9.)  The Affidavit's description of evidence included that which was gathered by or learned from a cooperating witness identified in the Affidavit as "CW-3."  In relying upon information and evidence provided by CW-3, the Affidavit disclosed that CW-3 had pled guilty to federal criminal offenses relating to CW-3's role engaging in fraud by operating certain telemarketing companies and that CW-3 was "provid[ing] information to the Government in the hope of receiving leniency at sentencing."  (*Id*. at 7.)

On November 20, 2019, law enforcement agents executed the Office Search Warrant and the Residence Search Warrant, during which they recovered evidence of the Subject Offenses.

**B.  The Indictment**

On November 19, 2019, a grand jury sitting in this District returned the Indictment, which was filed under seal, charging the defendants and eight co-defendants with carrying out a wide-ranging telemarketing scheme that defrauded hundreds of victims throughout the United States, many of whom were over the age of 55, by selling those victims so-called "business services" in connection with the victims' purported online businesses.  (Dkt. No. 1 at 1-2.)  Specifically, the defendants were charged with one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349.  The Indictment contained a detailed, four-page overview of the defendants' scheme that included, among other things, descriptions of the false representations made to the victims, the various phases and aspects of the scheme, the respective roles of the defendants in the scheme, and the locations where the defendants carried out those roles.  (*Id*. at 1-4.)

2

That same day, the Honorable Sarah Netburn, United States Magistrate Judge for the Southern District of New York, issued arrest warrants for the defendants and their co-defendants based on the charges set forth in the Indictment.  (Dkt. Nos. 4, 6.)  On November 20, 2019, law enforcement agents arrested the defendants based on those warrants, and the Indictment was unsealed that same day.  (Dkt. No. 2.)

## ARGUMENT

The defendants move for a bill of particulars and to disclose grand jury testimony.  These requests should be rejected because the defendants fail to meet their substantial burdens to demonstrate that they are entitled to such relief.  The defendants also move for disclosure of *Brady*, *Giglio*, and Jencks Act material.  Although the Court should enter an order pursuant to the recently amended Rule 5 of the Federal Rules of Criminal Procedure confirming the Government's *Brady* obligations, the defendants' request for any additional relief should be denied as, depending on the specific request, moot, lacking a legal basis, and lacking merit.

Brewster also moves to suppress certain evidence.  The motion to suppress the evidence obtained by search warrant should be denied because the issuance of both search warrants comported with the Fourth Amendment in all respects.  The motion to suppress the consensual recordings should be rejected because it is effectively a misguided discovery request that has no legal basis.

Lastly, the defendants move for permission to file unspecified additional and supplemental motions.  That request should be rejected as unripe.

## I.     The Defendants' Motion for a Bill of Particulars Should Be Denied

The defendants move for a bill of particulars.  (Def. Mem. 3-7.[1]) First, the defendants'

---

[1] "Def. Mem." refers to Brewster's memorandum of law filed on October 13, 2020.  (Dkt.

3

motion should be denied on procedural grounds for failure to comply with Local Criminal Rule 16.1.  Second, the defendants' motion should be denied on the merits because the Government has provided ample notice of the charges against the defendants and no bill of particulars is required.

### A.      The Defendants Failed to Comply With Local Rule 16.1

The defendants' motion for a bill of particulars should be denied as procedurally improper because they failed to comply with Local Criminal Rule 16.1, which states that "[n]o motion addressed to a bill of particulars . . . shall be heard unless counsel for the moving party files in or simultaneously with the moving papers an affidavit certifying that counsel has conferred with counsel for the opposing party in an effort in good faith to resolve by agreement the issues raised by the motion without the intervention of the Court and has been unable to reach agreement."  *See* Local Crim. R. 16.1.  Neither the defendants nor their attorneys have filed such an affidavit, nor have they previously requested these particulars from the Government, so the motion should not be entertained. *See United States v. Ming*, No. 02 Cr. 596 (LAK), 2002 WL 1949227, at *1 (S.D.N.Y. Aug. 22, 2002) (collecting cases).

### B.      The Defendants Are Not Entitled to a Bill of Particulars

Even if the defendants' motion did not suffer from this fatal procedural flaw, it also fails on the merits, because the defendants have not, and cannot, establish that they are entitled to a bill of particulars in light of the various forms of detailed notice that the Government has provided with respect to the charges in this case.

#### 1.      Applicable Law

While Federal Rule of Criminal Procedure 7(f) permits the Court to direct the Government

---

No. 115.)

4

to file a bill of particulars, it is well established that "[a] bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (quotation marks and citation omitted); *see also United States v. Mahabub*, No. 13 Cr. 908 (AJN), 2014 WL 4243657, at *2 (S.D.N.Y. Aug. 26, 2014); *United States v. Mandell*, 710 F. Supp. 2d 368, 384 (S.D.N.Y. 2010) (same).   Because a "bill of particulars is not an investigative tool for the defendants," *United States v. Johnson*, 21 F. Supp. 2d 329, 339 (S.D.N.Y. 1998), "[t]he important question is whether the information sought is *necessary*, not whether it is helpful," *United States v. Facciolo*, 753 F. Supp. 449, 451 (S.D.N.Y. 1990) (emphasis added).

Consistent with the above, "demands for particular information with respect to where, when, and with whom the Government will charge the defendant with conspiring are routinely denied." *United States v. Trippe*, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001); *see also United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) (noting that "[a]cquisition of evidentiary detail is not the function of the bill of particulars").   Indeed, it is well established that "the defendant does not 'need' detailed evidence about the conspiracy in order to prepare for trial properly." *United States v. Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir. 1989); *see also id.* ("It is well settled that defendants need not know the means by which it is claimed they performed acts in furtherance of the conspiracy nor the evidence which the Government intends to adduce to prove their criminal acts."); *and see United States v. D'Amico*, 734 F. Supp. 2d 321, 335 (S.D.N.Y. 2010) ("'A bill of particulars is not a general investigative tool, a discovery device or a means to compel the government to disclose evidence or witnesses to be offered prior to trial.'" (quoting *United States v. Gibson*, 175 F. Supp. 2d 532, 537 (S.D.N.Y. 2001))); *United States v. Bellomo*, 263 F. Supp. 2d 561, 580 (E.D.N.Y. 2003) ("A bill of particulars is not designed to:

obtain the government's evidence; restrict the government's evidence prior to trial; assist the defendant's investigation; obtain the precise way in which the government intends to prove its case; interpret its evidence for the defendant, or disclose its legal theory."); *United States v. Henry*, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994) ("This instrument should not function to disclose evidence, witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the defense.").

There are good reasons why bills of particulars are warranted only when the allegations in the Indictment, as supplemented by discovery and elsewise, are so general as to render it impossible to prepare a defense. Because "a bill of particulars confines the Government's proof to particulars furnished," it can "restrict unduly the Government's ability to present its case." *Henry*, 861 F. Supp. at 1197; *see also Mahabub*, 2014 WL 4243657, at *2 (recognizing that "care must be taken" in deciding whether to order a bill of particulars because "[t]he government's presentation of evidence at trial is limited to the particulars contained in the bill"); *United States v. Samsonov*, No. 07 Cr. 1198 (CM), 2009 WL 176721, at *3 (S.D.N.Y. Jan. 23, 2009) ("The vehicle of a bill of particulars serves to inform a defendant of the nature of the charge, when he is otherwise insufficiently informed, and must not be misused to compel disclosure of how much the Government can prove, nor to foreclose the Government from using proof it may develop as the trial approaches."). Moreover, the Government's provision of particulars tantamount to an itemized preview of its proof creates the very real danger that a defendant will "tailor [his] testimony to explain away the Government's case." *Henry*, 861 F. Supp. at 1197. These concerns animate the rule that "if the defendant has been given adequate notice of the charges against [him] and can prepare fully for trial with reasonably diligent efforts, the Government cannot be required to disclose additional details about its case." *Id.*

Applying these principles, courts routinely deny demands for bills of particulars identifying (1) "all acts" the defendant is alleged to have undertaken as part of the crime charged, *id.* at 1197 (noting that this demand "fall[s] clearly outside the ambit of a bill of particulars"), including wires or transactions alleged to be a part of a criminal scheme, *see, e.g.*, *United States v. Bonventre*, No. 10 Cr. 228 (LTS), 2013 WL 2303726, at *5-7 (S.D.N.Y. May 28, 2013); *United States v. Cuti*, No. 08 Cr. 972 (DAB), 2009 WL 3154310, at *3-4 (S.D.N.Y. Sept. 24, 2009); *United States v. Guttenberg*, No. 07 Cr. 141 (DAB), 2007 WL 4115810, at *4-5 (S.D.N.Y. Nov. 14, 2007), or (2) "where, when, and with whom" the Government will prove the defendant conspired, *Trippe*, 171 F. Supp. 2d at 240; *United States v. Heredia*, No. 02 Cr. 1246 (SWK), 2003 WL 21524008, at *9 (S.D.N.Y. 2003); *see also*, *e.g.*, *Samsonov*, 2009 WL 176721, at *4 (noting that demand for particulars identifying co-conspirators was "a veiled attempt to discern who is cooperating with the Government"); *United States v. Rittweger*, 259 F. Supp. 2d 275, 292 (S.D.N.Y. 2003) ("There is no need to provide a list of all unindicted co-conspirators.").

Moreover, "[i]f the information the defendant seeks 'is provided in the indictment or in some acceptable alternate form,' such as discovery or other correspondence, no bill of particulars is required." *United States v. Binday*, No. 12 Cr. 152 (CM), 2012 WL 6135013, at *11 (S.D.N.Y. Dec. 10, 2012) (citing *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987)); *see also United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004) ("[A] bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means." (quoting *Walsh*, 194 F.3d at 47).

### 2.    Discussion

Here, not only does the Indictment provide a sufficient overview of the scheme to allow the defendants to meet the charges against them, but the Government has also provided extensive

additional detail to the defendants through discovery.  For example, the Government has produced numerous affidavits, which were filed in support of the many search warrants obtained in the course of the Government's investigation, outlining the scheme in great detail.  Indeed, Brewster attached one of those detailed affidavits to his motion (*see* Dkt. No. 116-1), although he conveniently omits any reference to it in the context of his request for a bill of particulars.  The Affidavit provides, among other things, (1) an overview of the telemarketing fraud scheme and its various phases and aspects (*id*. at 4-6), (2) a summary and specific excerpts of information learned from victim interviews (*id*. at 6-7, 9), and (3) a detailed account of Brewster's involvement in the scheme, as relayed to law enforcement agents by CW-3, as well as a summary and excerpts of certain consensual recordings of Brewster made by CW-3 (*id*. at 7-11).  The Affidavit alone, the equivalent of a detailed criminal complaint, obviates the need for a bill of particulars.

But there is so much more.  In addition to a detailed Indictment and numerous affidavits, the defendant has also been provided recordings of himself made consensually and at the direction of law enforcement agents by CW-3.  These recordings, including those referenced in the Affidavit, contain some of the key evidence against Brewster.[2]  In addition, as the Government has made clear to the defendants, the trial record in *United States v. Ketabchi and Owimrin*, S8 17 Cr. 243 (SHS), also is a useful source of information about the nature of the scheme and the Government's evidence of that scheme.  The jury addresses, examinations, briefs on appeal, and the Second Circuit's summary order affirming the convictions are all easily accessible to the defendants, and provide detailed accounts about the Government's theory of the case.  Indeed, it is difficult to imagine defendants being provided a better roadmap of the Government's case than

---

[2] Allen and Ciaccio merely joined in Brewster's motion and did not make any additional arguments, so the Government's response is focused primarily on Brewster's arguments.

has been provided here.

The foregoing materials more than suffice to provide the defendants with the detail that they seek.  *See Binday*, 2012 WL 6135013, at *11 ("If the information the defendant seeks 'is provided in the indictment or in some acceptable alternate form,' such as discovery or other correspondence," no bill of particulars in required (citing *Bortnovsky*, 820 F.2d at 574)); *Mandell*, 710 F. Supp. 2d at 385 (denying request for particularization of alleged misrepresentations where the indictment was detailed and Government had provided voluminous, organized discovery); *Samsonov*, 2009 WL 176721, at *4 (denying bill of particulars request where indictment, discovery letters, and discovery materials gave defendant adequate information to prepare for trial); *Trippe*, 171 F. Supp. 2d at 240 (denying bill of particulars request in stock fraud case where indictment was detailed and substantial discovery had been provided).

Indeed, requests such as these—that is, requests for the Government to identify all documents or transactions giving rise to fraud charges (*see* Def. Mem. 6-7)—are routinely denied as beyond the scope of a bill of particulars.  *See, e.g.*, *Bonventre*, 2013 WL 2303726, at *5-7 (in case involving largest Ponzi scheme in U.S. history, which spanned decades, denying request for bill of particulars identifying, among other things, "the specific arbitrage trades in which [a defendant] was involved that the Government alleges are fraudulent," the "dates and stock names for all alleged backdated transactions," "all unnamed clients and allegedly fake trades referred to in" a particular count, and all allegedly false documents and records); *Cuti*, 2009 WL 3154310, at *3-4 (in accounting fraud case alleged to have spanned years, denying request for bill of particulars identifying every fraudulent transaction); *Guttenberg*, 2007 WL 4115810, at *4-5 (in insider trading case, denying request for bill of particulars itemizing trades alleged to have been based on material nonpublic information).

9

The defendants' reliance on the Second Circuit's decision in *Bortnovsky* is misplaced. There, the defendants were charged in a twelve-count indictment in connection with a scheme to defraud the Federal Emergency Management Association and the New York Property Insurance Underwriting Association by submitting false claims for burglary losses.  820 F.2d at 573-74.  At trial, the Government introduced evidence about twelve burglaries, even though it admitted only four of those twelve were fabricated.  *Id.* at 574.  The Second Circuit concluded that the defense had been unable to adequately prepare for trial since the Government had turned over 4,000 documents in discovery but had failed to specify the dates of the fake burglaries.  *Id.* at 574-75.

In contrast, this is not a case where a few false statements or fraudulent transactions are lurking in hundreds of legitimate business deals.  *See United States v. Tuzman*, 301 F. Supp. 3d 430, 451 (S.D.N.Y. 2017) ("In applying these principles, courts have differentiated between cases in which only isolated illegal activity is alleged, and cases in which most or all activity is alleged to have been illegal.").  To the contrary, the Government has made clear that the scheme in which the defendants participated was pervasive in their telemarketing businesses and that all solicitations made during the time period of the charged conspiracy are alleged to have been fraudulent.

Moreover, each of the Government's productions are well-organized and accompanied by cover letters that provide, at the very least, details about the source of the materials.  In this case, "the Government here has done more than merely produce 'mountains of documents'; instead, the Government has provided the information in an organized and comprehensible fashion."  *United States v. Skelos*, No. 15 Cr. 317, 2015 WL 6159326, at *13 (S.D.N.Y. Oct. 20, 2015).  The defendants' insistence that the Government cabin its proof at trial through a bill of particulars

simply exceeds the requirement that a bill of particulars only be required when the information is *necessary*. "Defendants' request that the Government identify precisely which documents or recordings form the basis for the fraudulent transactions, the exact misrepresentations allegedly made therein, when and by whom they were made, and the specific details of the harm caused thereby, is a request for 'the very type of evidentiary minutiae that is not appropriate in a bill of particulars.'" *United States v. Ghavami*, No. 10 Cr. 1217, 2012 WL 2878126, at *4 (S.D.N.Y. July 13, 2012) (emphasis omitted) (quoting *United States v. Mitlof*, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001)).

The charging instrument, search warrant affidavits, discovery materials, and correspondence in this case, as well as the record from the *Ketabchi/Owimrin* trial, clearly put the defendants on notice of the nature of the charges against them and are more than sufficient to permit them to understand the charges and to prepare for trial.

## II.     The Defendants' Motion to Disclose Grand Jury Testimony Should Be Denied

The defendants move for disclosure of the grand jury proceedings in this case. (Def. Mem. 23-24.) This motion is baseless, and should be denied.

### A.     Applicable Law

Grand jury proceedings carry a presumption of regularity, and are secret and closed. *See In re Grand Jury Subpoena*, 103 F.3d 234, 239 (2d Cir. 1996); *see also* Fed. R. Crim. P. 6(e). However, under Rule 6 of the Federal Rules of Criminal Procedure, a defendant may seek the disclosure of grand jury minutes where the defendant "shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). The strong presumption of grand jury secrecy and regularity can only be overcome by a defendant's strong showing of "particularized need that outweighs the need for

secrecy." *United States v. Moten*, 582 F.2d 654, 662 (2d Cir. 1978) (internal citations and quotations omitted).  "[R]eview of grand jury minutes is rarely permitted without specific factual allegations of government misconduct."  *United States v. Torres*, 901 F.2d 205, 233 (2d Cir. 1990); *see also United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994).  Furthermore, "[g]enerally, a facially valid indictment returned by a duly constituted grand jury suffices to call for a trial on the merits of the charges set forth therein." *United States v. Dunn*, No. 05 Cr. 127 (KMK), 2005 WL 1705303, at *2 (S.D.N.Y. July 19, 2005) (alteration in original).  Thus, "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence."  *United States v. Calandra*, 414 U.S. 338, 345 (1974).

### B.    Discussion

The defendants fall well short of the high burden they must satisfy to initiate a review of the grand jury proceedings.  Their arguments relate to their disagreement about the precise words used by Brewster in a consensual recording and whether a law enforcement agent may have either misheard those words or took them to have a meaning that the defendants now dispute.  (Def. Mem. 23-24.)  These arguments are classic factual questions for a jury (or a grand jury) to resolve, as they relate to what words were used on a recording, who spoke those words, and what those words mean.  The well-settled law regarding grand jury regularity and secrecy, as set forth above, plainly does not permit the defendants to initiate a review of the grand jury proceedings on the mere basis that they contest their guilt or certain of the Government's evidence, just like every other defendant who proceeds to trial.  The defendants' apparent disagreement with what words are heard on a single snippet of audio recording, and their interest in contesting what potential inferences a jury should draw from that evidence, supply no reason to doubt the validity and regularity of the grand jury proceedings.  To the contrary, it would be an unusual case in which a

12

defendant who persists in his denial of guilt adopts the Government's understanding of recordings made in the course of the investigation and the Government's inferences (or those of the grand jury) concerning his knowledge and intent.

### III.   The Defendants' Motion to Disclose *Brady*, *Giglio*, and Jencks Act Material Should Be Denied

First, the defendants move for an order directing the Government to search through the productions of discovery material for items that the defense may consider exculpatory and then identify those materials for the defendant.  The defendants cite no precedent for this request, and the Government is aware of none.  The request should be rejected.

On October 21, 2020, after the defendants filed their motions, the passage of the Due Process Protections Act amended Rule 5 of the Federal Rules of Criminal Procedure to provide that "on the first scheduled court date when both prosecutor and defense counsel are present, the judge shall issue an oral and written order to prosecution and defense counsel that confirms the disclosure obligation of the prosecutor under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and the possible consequences of violating such order under applicable law."  Due Process Protections Act, Pub. L. No. 116-182, § 2, 134 Stat. 894 (2020).  Accordingly, the Court should enter such an order in this case.  Even absent such an order, the Government recognizes its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny.

The defendants do not merely ask for the Government to produce or disclose any potential *Brady* materials, however, they ask that the Court order the Government to go further than that. The defendants suggest, without citation to any authority, that the Court should require the Government to go far beyond its *Brady* obligations: the defendants want the Government to review all of the evidence that the Government has already produced to the defendants and then highlight for the defendants anything the Government believes might be useful in the defense of the charges

13

in this case.  The Government has no such burden, and the defendants cite no case suggesting otherwise.  The Government's *Brady* obligations are satisfied, of course, when the Government provides or discloses the existence of any potentially exculpatory materials to the defendants.  *See United States v. Coppa*, 267 F.3d 132, 144 (2d Cir. 2001) ("we reiterate the longstanding constitutional principal that as long as a defendant possesses *Brady* evidence in time for its effective use, the government has not deprived the defendant of due process of law").  The Government has diligently and timely produced the materials it has gathered related to this case (with the exception of certain *Giglio* and 18 U.S.C. § 3500 materials, which will be produced in advance of trial), satisfying any potential *Brady* obligations.  The Court should reject the defendants' unprecedented request to compel the Government to act as an adjunct of the defense team.[3]

Second, the defendants request that any *Giglio*/18 U.S.C. § 3500 materials be produced at least 60 days before the start of trial.  (Def. Mem. 22-23.)  Production of *Giglio* material need only take place "in sufficient time that the defendant will have a reasonable opportunity to act upon the information efficaciously."  *United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007).  The Government will do so, and it intends to confer with the defendants in order to formulate a comprehensive, fair, and reasonable timeline for mutual pretrial disclosures.  Indeed, the Government would have engaged in those discussions if the defendants had chosen to raise this

---

[3] Brewster asserts, without offering any sworn statement in support of such a claim, that an unnamed victim who was interviewed by a law enforcement agent later told Brewster that she had "told the agent that they did not feel that they had been victimized, [and] that they were satisfied." (Def. Mem. 21.)  The Government is not aware of any such statements by any victim who has been interviewed in connection with the Government's investigation of this case, and, after reviewing Brewster's motion, recently confirmed with the case agents that their interview notes and reports contain no such statements.

14

issue with counsel instead of resorting to motion practice in the first instance.

In any event, the Government recognizes its obligations under *Giglio v. United States*, 405 U.S. 150, 154 (1972), and intends to follow the general practice in this district of producing such materials, if any, simultaneously with Jencks Act materials, substantially before trial, taking into account the nature and length of the trial. *See, e.g.*, *United States v. King*, No. 10 Cr. 122 (JGK), 2011 WL 1630676, at *7 (S.D.N.Y. Apr. 27, 2011) (noting, and approving over defense objection, Government's agreement to produce *Giglio* material at same time as *Jencks* Act disclosures); *Trippe*, 171 F. Supp. 2d at 238 ("The usual practice in this district is that the Government agrees to make impeachment information available to the defense at the same time as *Jencks* Act material[.]"). Early disclosure of such material is not warranted simply because the defendants prefer it. *See, e.g.*, *United States v. Kenyatta*, No. 16 Cr. 273 (DLC), 2017 WL 972114, at *3 (S.D.N.Y. Mar. 9, 2017) (denying motion to compel production of *Giglio* material because the Government "asserts . . . that it will provide any *Giglio* and Jencks material before the start of trial pursuant to its customary schedule for such productions, and in sufficient time for defense counsel to prepare to cross examine its witnesses"); *United States v. Davis*, No. 06 Cr. 911 (LBS), 2009 WL 637164, at *14 (S.D.N.Y. Mar. 11, 2009) ("The Second Circuit has held that a request for immediate or early disclosure [of *Giglio* material] has no basis in the law.").

Moreover, the Court lacks authority to order early production of Jencks Act (18 U.S.C. § 3500) material. *Coppa,* 267 F.3d at 145 (The "Jencks Act prohibits a District Court from ordering the pretrial disclosure of witness statements."); *see also, e.g.*, *In re United States*, 834 F.2d 283, 286-87 (2d Cir. 1987) (granting mandamus and vacating order to produce statements); *United States v. Conyers*, No. S13 15 Cr. 537 (VEC), 2016 WL 7189850, at *8 (S.D.N.Y. Dec. 9, 2016) (denying motion for early disclosure because "the Jencks Act precludes the Court from

15

compelling disclosure of such materials before the relevant witness testifies at trial"); *United States v. Ramirez*, No. 91 Cr. 493 (KMW), 1991 WL 177239, at *1 (S.D.N.Y. Aug. 30, 1991) (denying motion for production of Jencks Act material because "the court has no authority to order the government to do so").  The Government intends to produce Jencks Act material substantially before trial, hopefully pursuant to a comprehensive schedule of mutual pretrial disclosures agreed upon by all parties.  Any deadline for production of Jencks Act material in advance of trial must be set through discussion between the parties, not a defense motion.

## IV.    Brewster's Motion to Suppress Should Be Denied

Brewster moves to suppress the evidence obtained from the execution of the Office Search Warrant and the Residence Search Warrant, and consensual recordings made by CW-3.  Brewster's motion should be denied.  First, the Office Search Warrant and the Residence Warrant were based on probable cause as demonstrated in the Affidavit, and that showing is not undermined by any of the purported misrepresentations or omissions.  Second, the request to suppress the consensual recordings is effectively a misguided discovery request that has no legal basis because the recordings implicate no Fourth Amendment concerns.  Accordingly, the Brewster's motion to suppress should be denied.

### A.    Applicable Law

#### 1.    Probable Cause

A judge's finding of probable cause is afforded significant deference.  "A reviewing court must accord substantial deference to the finding of an issuing judicial officer that probable cause exists. . . . The reviewing court's determination should be limited to whether the issuing judicial officer had a substantial basis for the finding of probable cause."  *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993) (internal citations omitted) (reversing suppression order).

Moreover, the determination that probable cause exists is a relatively low threshold. "A judge's probable-cause determination is not overly strict. Presented with a warrant application, the judge must 'simply . . . make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Martin*, 426 F.3d 68, 74 (2d Cir. 2005) (emphasis omitted) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "The quanta of proof necessary to establish probable cause is 'only the probability, and not a prima facie showing, of criminal activity.'" *Wagner*, 989 F.2d at 72 (quoting *Gates*, 462 U.S. at 235). Moreover, "[p]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Martin*, 426 F.3d at 74 (quoting *Gates*, 462 U.S. at 232). Thus, "[i]n assessing probabilities, a judicial officer must look to 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007) (quoting *Gates*, 462 U.S. at 231). "[T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.'" *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)).

### 2.     Misrepresentations and Omissions in a Search Warrant Affidavit

A search warrant affidavit is presumed reliable. *See Franks v. Delaware*, 438 U.S. 154, 171 (1978); *United States v. Klump*, 536 F.3d 113, 119 (2d Cir. 2008). "The task of a reviewing court is simply to ensure that the 'totality of the circumstances' afforded the [issuing judge] a 'substantial basis' for making the requisite probable cause determination." *United States v. Clark*,

638 F.3d 89, 93 (2d Cir. 2011) (quoting *Gates*, 462 U.S. at 238).   "In certain circumstances, however, a defendant may challenge the truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the warrant and the resulting search or seizure."   *United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003).   Not every statement in a warrant affidavit must be true.   *See United States v. Canfield*, 212 F.3d 713, 717 (2d Cir. 2000).   To invoke the *Franks* doctrine, the defendant must demonstrate that there were intentional misstatements or omissions in the search warrant affidavit and that those misstatements or omissions were material. *See Awadallah*, 349 F.3d at 64.   The defendant must establish both components—i.e., intent and materiality—by a preponderance of the evidence.   *See Klump*, 536 F.3d at 119.

"The *Franks* standard is a high one."   *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991).   To secure a *Franks* hearing, a defendant must make a "'*substantial preliminary showing*' that a deliberate falsehood or statement made with reckless disregard for the truth was included in the warrant affidavit and the statement was necessary to the judge's finding of probable cause." *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008) (emphasis added) (quoting *Franks*, 438 U.S. at 155-56, 170-71).   The burden to even obtain a *Franks* hearing is a heavy one, and such hearings are thus rare.   *See United States v. Brown*, 744 F. Supp. 558, 567 (S.D.N.Y. 1990) ("A defendant seeking to have the Court hold a *Franks* hearing bears a substantial burden."); *United States v. Swanson*, 210 F.3d 788, 790 (7th Cir. 2000) ("These elements are hard to prove, and thus *Franks* hearings are rarely held.").

In reviewing a challenge to a warrant, "[o]missions are not subject to the same high level of scrutiny as misstatements."   *United States v. Rivera*, 750 F. Supp. 614, 617 (S.D.N.Y. 1990). Because "[a]ll storytelling involves an element of selectivity," it is "not shocking that every affidavit will omit facts which, in retrospect, seem significant." *United States v. Vilar*, No. 05 Cr.

621 (KMK), 2007 WL 1075041, at *27 (S.D.N.Y. Apr. 4, 2007) (citations and internal quotation marks omitted); *see also Awadallah*, 349 F.3d at 67; *United States v. Feola*, 651 F. Supp. at 1109. "[A]n affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation." *Mandell*, 710 F. Supp. 2d at 373 (quoting *Awadallah*, 349 F.3d at 67). Thus, "as a practical matter the affirmative inclusion of false information in an affidavit is more likely to present a question of impermissible official conduct than a failure to include a matter that might be construed as exculpatory." *Id*. at 376 (internal quotation marks omitted). This is because "allegations of omission potentially open officers to endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit." *Id.* (internal quotation marks omitted).

To allow for the inference that an affiant acted with reckless disregard for the truth, the omitted information must be "clearly critical" to assessing the legality of the search. *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir. 1996) (internal quotation marks omitted). The movant must make a substantial preliminary showing that a reasonable person would have known that the magistrate judge would have wanted to know the kind of information that was omitted. *See United States v. Perez*, 247 F. Supp. 2d 459, 474 (S.D.N.Y. 2003).

A search warrant affiant "does not necessarily act with 'reckless disregard for the truth' simply because he or she omits certain evidence that a reviewing court, in its judgment, considers to be 'clearly critical.'" *United States v. Rajaratnam*, 719 F.3d 139, 154 (2d Cir. 2013) (emphasis omitted). "Rather, the reviewing court must be presented with credible and probative evidence that the omission of information . . . was 'designed to mislead' or was 'made in reckless disregard of whether [it] would mislead.'" *Id.* (quoting *Awadallah*, 349 F.3d at 68). "[T]he mere intent to exclude information is insufficient . . . [since] every decision not to include certain information in

19

the affidavit is 'intentional' insofar as it is made knowingly." *Awadallah*, 349 F.3d at 67-68 (internal quotation marks omitted).

 "To prove reckless disregard for the truth, the defendant[] [must] prove that the affiant in fact entertained serious doubts as to the truth of his allegations." *Rajaratnam*, 719 F.3d at 154 (internal quotation marks omitted); *see also Falso*, 544 F.3d at 126 ("Allegations of negligence or innocent mistake are insufficient." (quoting *Franks*, 438 U.S. at 171)).

"To determine if misrepresentations or omissions are material, a court corrects the errors and then resolves de novo whether the hypothetical corrected affidavit still establishes probable cause." *United States v. Lahey*, 967 F. Supp. 2d 698, 711 (S.D.N.Y. 2013). "If the corrected affidavit supports probable cause, the inaccuracies were not material to the probable cause determination and suppression is inappropriate." *Canfield*, 212 F.3d at 718. In other words, "[t]he ultimate inquiry is whether, after putting aside erroneous information and material omissions, there remains a residue of independent and lawful information sufficient to support probable cause." *Id.* (internal quotation marks omitted).

**B.   Discussion**

**1.   The Affidavit Did Not Contain Knowingly False or Misleading Information**

Brewster claims that the Affidavit knowingly contained "numerous demonstrably false and deceptive statements" and "omitted critical information." (Def. Mem. 9.) As explained below, he is wrong. In any event, none of the purportedly problematic statements or omissions were made with intent to deceive or reckless regard for the truth, and Brewster provides nothing to suggest otherwise.

First, Brewster argues that the Affidavit omitted the "critical information" that CW-3 was subject to an order entered in course of litigation with the Federal Trade Commission. (Def.

Mem. 9; *see also* Dkt. No. 116-3.)   Brewster casts this "omission" as a sinister attempt to improperly bolster CW-3's reliability and veracity.   His argument is illogical and baseless, and should be rejected.   Indeed, it is obvious from the face of the Affidavit that the addition of this fact would have been immaterial.   The Affidavit makes clear that CW-3 had "pleaded guilty" to "various criminal offenses, including [wire fraud, wire fraud conspiracy, and money laundering conspiracy], related to their respective role[] operating certain of the Telemarketing Companies." (Dkt. No. 116-1 at 9.)   It further explained that CW-3 had "agreed to provide information to the Government in the hope of receiving leniency at sentencing."   (*Id.*)   Accordingly, CW-3's prior commission of fraud crimes and CW-3's current incentives were laid bare for the Magistrate Judge. Those were the key facts bearing on CW-3's reliability and veracity.   Assuming *arguendo* that the affiant was aware that CW-3 was the subject of a civil order filed years earlier, such a fact would have had no additive effect—a potential civil violation pales in comparison to CW-3's plea of guilty to federal criminal fraud violations.   Such a potential civil violation was simply not material in light of the disclosure that CW-3 had pled guilty to fraud crimes and was providing information in the hopes of obtaining a lighter sentence.   In any event, any such omission is of no consequence because probable cause would still have been amply established even with the inclusion of this additional fact.   The alleged omission therefore was not material because the "hypothetical corrected affidavit" with the omitted information "still establishes probable cause."   *Lahey*, 967 F. Supp. 2d at 711; *Canfield*, 212 F.3d at 718.

Second, Brewster argues that the Affidavit was deficient because it did not disclose that CW-3 was "actively under criminal investigation" by the Monmouth County (New Jersey) Prosecutor for allegedly participating in a marijuana and THC distribution scheme.   (Def. Mem. 9.) As noted by Brewster, the Office of the Monmouth County Prosecutor has stated publicly that the

arrests in their case resulted from a "yearlong investigation," and that one of the many agencies that provided assistance was the "123 Precinct of the New York City Police Department." (Dkt. No. 116-4 at 4, 6.) The Government (and the affiant), however, were unaware of the Monmouth County Prosecutor's investigation prior to CW-3's arrest. The Government learned of the investigation *after* the Affidavit was sworn and *after* the Office Search Warrant and Residence Search Warrant were executed, and Brewster's suggestion otherwise is mere conjecture. Assuming *arguendo* that CW-3 was a subject of the Monmouth County Prosecutor's investigation as of the date the Affidavit was sworn, the Government (and the affiant) cannot be faulted for omitting the existence of a covert investigation by another prosecuting authority about which it was not aware. In any event, even if CW-3's potential status as a subject of the Monmouth County Prosecutor's investigation had been included in the Affidavit, that fact would neither have materially effected the reliability and veracity of CW-3's information regarding Brewster nor would it have somehow undermined the showing of probable cause set forth in the Affidavit. *See Mandell*, 710 F. Supp. 2d at 374 ("Omitted information that is potentially relevant but not dispositive is not enough to warrant a *Franks* hearing." (internal quotation marks and citation omitted)).

Third, Brewster argues that the Affidavit's recitation of information provided by CW-3 is a "demonstrably false material statement" because it "suggests" that certain co-conspirators "secretly referred" to a website "by the predatory-sounding name of 'Money Sucking Website,'" leaving a "cloak-and-dagger impression" that revealed the co-conspirators' "true larcenous intent." (Def. Mem. 10.) This bizarre claim should be given short shrift. The Affidavit's mundane—and true—statement was that, CW-3 had informed law enforcement agents about a certain website, "known by CW-3 and CW-3's co-conspirators as the 'Money Sucking Website' or, for short,

'MSW,' that generated lead lists of vulnerable individuals who were subsequently victimized by the Business Opportunity Scheme." (Dkt. No. 116-1 at 9-10.) Brewster's most vehement objections appear to be related to the use of the phrase "Money Sucking Website," which he also appears to admit is the name of the website referred to in the Affidavit. (*Id*.) Neither the Government nor the affiant chose the name of the website; this is simply how it was known. Apparently, Brewster would have preferred that the Affidavit soften whatever effect the (accurate) name of the website might have had on the Magistrate Judge who reviewed the Affidavit by including Brewster's own favorable gloss or spin on CW-3's information. (Def. Mem. 10-11.) Of course, there is no requirement that the Affidavit include anything of the sort, and Brewster cites no case that suggests otherwise. Similarly, Brewster's suggestion that he is entitled to relief because the Affiant should have understood certain consensual recordings in a particular way— essentially, the light most favorable to Brewster—and then recounted each of those facts in the Affidavit (Def. 11-12), is unsupportable under the legal framework. *See Vilar*, 2007 WL 1075041, at *27 ("All storytelling involves an element of selectivity, so it is not shocking that every affidavit will omit facts which, in retrospect, seem significant." (internal quotation marks and citations omitted)).

Fourth, Brewster takes issue with the Affidavit's statement that "CW-3 informed law enforcement that, from at least in or about 2017 until at least in or about 2018, BREWSTER and [another co-conspirator] operated . . . the 'Money Sucking Website.'" (Dkt. No. 116-1 at 9-10.) Brewster does not argue, nor could he, that this statement is untruthful: the Affidavit accurately stated information that CW-3 provided to law enforcement agents. To the extent Brewster is attempting to challenge the accuracy of CW-3's information, as related in the Affidavit, such a challenge fails as a matter of law. *See United States v. Cook*, 348 F. Supp. 2d 22, 29 (S.D.N.Y.

2004) ("If there is an inaccuracy in the affidavit based upon information provided by a third party, a *Franks* hearing is inappropriate . . . There is no right to a hearing when the challenge is to information provided by an informant or other source." (internal quotation marks and citation omitted)); *United States v. Markey*, 131 F. Supp. 2d 316, 324 (D. Conn. 2001) ("The agents were simply relating to the court information that was provided by the postal letter carrier. *Franks* is implicated only when the false statement is made by, or the reckless disregard is that of, the affiant. There is no right to a hearing when the challenge is to information provided by an informant or other source.").

Fifth, Brewster challenges the Affidavit's quotations of a certain consensual recording, relying upon what Brewster's counsel apparently hears on that recording. Of course, the issue of what precise words are spoken on the recording will be an issue for the jury. However, even assuming *arguendo* that Brewster's version of the transcript is accurate, it is clear that the alleged misquotations are entirely immaterial to the Affidavit's showing of probable cause. For example, Brewster suggests that the Affidavit should have read "CW-3 asked Brewster 'How's the Money Sucking Website?' and Brewster responded, 'Really good'" instead of "Brewster told CW-3 that the 'money sucking website is . . . really good.'" (Def. Mem. 12.) Brewster's argument is frivolous. The meaning of these two formulations is identical, and electing to use one over the other could not possibly influence a Magistrate Judge's determination of probable cause. *See Lahey*, 967 F. Supp. 2d at 711; *Canfield*, 212 F.3d at 718.

Sixth, Brewster takes issue with the Affidavit's use of words like "purported," "promised," and "intended" when accurately and neutrally describing the Government's theory of the case. (Def. Mem. 13.) This challenge is best understood as a misguided effort to prematurely contest Brewster's guilt. Of course, that is an issue that the jury will decide. The descriptors used in the

Affidavit are fair, reasonable, and accurate in light of the evidence gathered in this case, including that which is set forth in the Affidavit, and are consistent with the description of the scheme as set forth in the Indictment.  Brewster's eagerness to contest the Government's theory of his guilt does not afford him any special ability to challenge the Affidavit's description of the scheme, and he cites no case that would permit him to do so.

Lastly, Brewster's attack on CW-3's reliability as a cooperating witness similarly is misguided.  If the Government calls CW-3 to testify at trial, Brewster will have ample opportunity to cross-examine CW-3 and highlight any facts from which the jury might infer that CW-3's testimony is unreliable.  But Brewster has no basis to argue that the Court should somehow suppress evidence because of CW-3's arrest for drug-related conduct that post-dated the Affidavit, and of which the Government and the affiant were not aware at the time the Affidavit was sworn.[4] As described in detail above, the Affidavit disclosed CW-3's participation in the telemarketing fraud scheme, guilty plea to fraud crimes arising from that conduct, and the incentive provided to CW-3 in providing information to law enforcement agents.  (Dkt. No. 116-1 at 9.)  The affiant and the Magistrate Judge made no error in relying upon CW-3's information to establish and find probable cause, and, as explained above, none of the additional disclosures suggested by Brewster would have been material in light of the disclosures already set forth in the Affidavit.

Even if the alleged omissions or misstatements were material, Brewster has failed to make any showing that its omission "was 'designed to mislead' or was 'made in reckless disregard of whether [it] would mislead.'"  *Rajaratnam*, 719 F.3d at 154.  Indeed, a search warrant affiant "does not necessarily act with 'reckless disregard for the truth' simply because he or she omits certain

---

[4] The Government notes that the case brought by the Monmouth County Prosecutor remains pending and, like Brewster, CW-3 is presumed innocent.

evidence that a reviewing court, in its judgment, considers to be 'clearly critical.'" *Id.*; *see also id.* at 155 (finding no intent where drafting team "just didn't really think about" including omitted information); *Vilar*, 2007 WL 1075041, at *29 (finding no intent where affiant "never thought of" including omitted information).  Rather, the defendant must "prove that the affiant in fact entertained serious doubts as to the truth of his allegations." *Rajaratnam*, 719 F.3d at 154. Brewster has set forth no reason for the Court to believe as much, particularly in light of the marginal—if any—relevance of the omitted information to probable cause.[5]

### 2.     The Consensual Recordings Do Not Implicate the Fourth Amendment

Brewster's motion to suppress the consensual recordings, which were made at the direction of law enforcement, similarly is meritless.  As Brewster appears to acknowledge, a third party— CW-3—consented to the recording of each of the conversations that are captured on the recordings. Therefore, the recordings do not implicate the Fourth Amendment in any way.  *See United States v. White*, 401 U.S. 745, 749 (1971) ("[H]owever strongly a defendant may trust an apparent

---

[5] Although the Court has ample basis to deny Brewster's motion on the merits, the Government notes that Brewster has failed to demonstrate that he has standing to move to suppress the evidence gathered pursuant to the Office Search Warrant and the Residence Search Warrant. *See, e.g.. United States v. Dupigny*, No. S1 18 Cr. 528 (JMF), 2019 WL 2327697, at *3 (S.D.N.Y. May 20, 2019) (recognizing that defense attorney's affidavit inadequate to confer standing "because it is not based on personal knowledge" and denying motion to dismiss because "the burden is on [defendant] to establish his Fourth Amendment interests in the items searched and seized, and he has failed to carry that burden.").  In order to challenge either warrant, Brewster "bears the burden of proving . . . that he had a legitimate expectation of privacy," *United States v. Watson*, 404 F.3d 163, 166 (2d Cir. 2005) (internal quotation marks omitted), in the contents of the two premises.  To do so, "a defendant must submit an affidavit from someone with personal knowledge demonstrating sufficient facts to show that he had a legally cognizable privacy interest" in the property searched or seized. *United States v. Ruggiero*, 824 F. Supp. 379, 391 (S.D.N.Y. 1993), *aff'd sub nom. United States v. Aulicino*, 44 F.3d 1102 (2d Cir. 1995); *see also United States v. White*, No. 17 Cr. 611 (RWS), 2018 WL 4103490, at *8 (S.D.N.Y. Aug. 28, 2018) ("This Circuit has routinely rejected efforts by defendants to establish Fourth Amendment standing based on the Government's allegations or evidence").

colleague, his expectations in this respect are not protected by the Fourth Amendment when it turns out that the colleague is a government agent regularly communicating with authorities."); *United States v. Barone*, 913 F.2d 46, 49 (2d Cir. 1990) ("Because the government made the recording with the consent and cooperation of [a cooperating witness] there was no need to inform [the defendant] or obtain a court order." (collecting cases)); *see also* 18 U.S.C. § 2511(c)(2) ("It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception."). Accordingly, Brewster's motion to suppress should be denied. *See, e.g.*, *United States v. Lupoi*, No. 14 Cr. 42 (SJ), 2014 WL 12681632, at *1 (E.D.N.Y. Dec. 17, 2014) (denying motion to suppress because, among other reasons, "consensual recordings do not require a warrant").[6]

In the alternative, Brewster asks for "immediate production of discovery regarding the circumstances of each of the audio recordings and an evidentiary hearing to determine their legality and potential admissibility." (Def. Mem. 20.) As a threshold matter, Brewster never asked the Government for this information prior to filing his motion, rendering it procedurally improper under Local Criminal Rule 16.1. It should be denied on that ground alone. *See Ming*, 2002 WL 1949227, at *1.

Brewster's request also fails on the merits. There is neither a general requirement nor specific reason in this case that the Government should be compelled to produce such information

---

[6] Brewster also suggests that CW-3's potential violation of a civil injunction might support suppression of the consensual recordings. That suggestion is baseless. First, the alleged violation of a civil injunction would not somehow create a reasonable expectation of privacy under the Fourth Amendment where one otherwise would not exist. Second, CW-3 made the consensual recordings at the direction of law enforcement agents.

or that the Court should hold such a hearing.  Tellingly, Brewster does not cite to a single case supporting his request.  Specifically, Brewster complains that he cannot independently determine whether the recordings were "consensually made" based on the recordings themselves.  (Def. Mem. 19.)  Certainly, if the Government chooses to introduce one or more of the recordings at Brewster's trial, it will, of course, first establish the consensual nature of each recording and provide sufficient information regarding the circumstances of each recording to demonstrate its authenticity.  Brewster's request for additional, detailed information about the recordings is nothing more than a transparent attempt to obtain by backdoor information about the Government's investigation and case at trial beyond that to which he is entitled at this point in the proceeding, in order to gain a strategic advantage at trial.  Nevertheless, as a courtesy to Brewster and to avoid potential additional litigation, the Government has begun creating a chart of certain information about the consensual recordings—including the Bates number, duration, date, and the individuals captured on each recording—and will produce that information to Brewster and his co-defendants.  Accordingly, the Court should deny Brewster's alternative request as procedurally improper under Rule 16.1, as meritless, and as moot.

## V.      The Defendants' Motion to Permit More Motions Should Be Denied

The defendants request an opportunity to make unspecified "additional legal challenges," apparently at a time of their own choosing.  (Def. Mem. 25.)  This request should be denied as unripe.  If and when the defendants determine that they wish to file an additional motion, they should be required to seek leave of the Court before doing so.  At that time, the Government can inform the Court whether it opposes or consents to additional motion practice depending on the nature of the motion, the posture of the case, and other relevant circumstances.  The Court then can rule on the defendants' request for leave.  The defendants' current proposal that the Court

prematurely rule in the abstract and permit them preemptive leave to file unspecified additional motions at any time of their choosing for the duration of the case is inappropriate and unnecessary. Indeed, the defendants cite no authority in support of their request, and the Government is aware of none.  Accordingly, the motion should be denied.

## **CONCLUSION**

For the foregoing reasons, the defendants' pretrial motions should be denied.

Dated: New York, New York
       November 3, 2020

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney

By:  *Robert B. Sobelman*

Kiersten A. Fletcher
Benet J. Kearney
Robert B. Sobelman
Assistant United States Attorneys
Southern District of New York
(212) 637-2238/2260/2616
